Case 09-33059-AJC   Doc 397   Filed 06/14/12   Page 1 of 9



**ORDERED in the Southern District of Florida on June 12, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

DM 668, LLC

    Debtor-In-Possession.

_____/

Case No. 09-33059-AJC

Chapter 11

### ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM NO 3

THIS CAUSE came before the Court for evidentiary hearing on November 29, 2011 and, again, on January 20, 2012 upon the Debtor's Objection to Claim No. 3 of Dr. Nader and Daisy Afrooz (the "Afroozes") (DE 160) and the Supplemental Objection (DE 366) (collectively the "Objection"). The Court being familiar with the record, and having considered the testimony and evidence admitted into the record, as well as the candor and demeanor of the witnesses, and being otherwise duly advised in the premises, does make the following findings of fact and

conclusions of law sustaining the Objection to the Afroozes' Claim No. 3, for the reasons set forth herein.

## FINDINGS OF FACT

### I. BACKGROUND FACTS

The Debtor-in-Possession, DM 668, LLC ("DIP" or "Debtor"), is a New York entity, and is wholly owned by David Marvisi. On September 17, 2004, Debtor and Michael Yaron ("Yaron") became the co-owners of Condominium Unit 3804 ["Unit 3804"] and Condominium Unit 3805 ["Unit 3805"], and certain parking rights and appurtenances thereto in a building known as the Continuum located in South Beach. The Legal description of the property is:

> a)   -as to Unit #3805:
>
> Condominium Parcel No. 3805, in Continuum on South Beach Condominium, the South Tower, a condominium, according to the declaration thereof, recorded November 20, 2002, under Clerk's File No. 02r-724522 in Official Records 20817, Page 656 of the Public Records of Miami-Dade County. Florida
>
> b)   -as to Unit #3804:
>
> Condominium Parcel No. 3804, in Continuum on South Beach Condominium, the South Tower, a condominium, according to the declaration thereof, recorded November 20, 2002, under Clerk's File No. 02r-724522 in Official Records 20817, Page 656 of the Public Records of Miami-Dade County. Florida

Units 3804 and 3805 are collectively referred to hereinafter as the "Condominium", as the Units were combined by Debtor and Yaron after their purchase to make one unit.

Some time after they purchased the Condominium, the Debtor and Yaron began litigating. On or about December 11, 2008, a lawsuit was filed by Yaron seeking to partition the Condominium (the "Partition Action").

On or about August 15, 2009, the Afroozes, through their son, Peter Taylor Afrooz ("Peter") (a licensed attorney in the State of Florida and a licensed real estate sales agent)

executed several sale offers, drafted by Peter, to purchase the Condominium from Yaron and the Debtor.  *See* Afrooz Exhibits 1-5.  Yaron sought court approval to sell the Condominium to the Afroozes by filing an *Emergency Motion for Approval of Sale* (Afrooz Exhibit 13).

The sale offers consisted of the following;

Afrooz Exhibit 1 ("Contract 1[1]") contained certain "material" terms which are of significance in this matter.  Specifically, Contract 1 provided the following relevant material terms:

- Purchase Price of $5,100,000.00 (line15);

- "Deposit held in escrow by Peter Taylor Afrooz, Esq. ("Escrow Agent") in the amount of (checks subject to clearance) $100,000.00" (line 17);

- Deadline of September 1, 2009 to accept proposal (lines 24-26);

- All cash deal with no financing contingency (line 32);

- Closing Date of November 15, 2009 (line 58);

- Signatures of the Afroozes, by their son, Peter (lines 115-124);

- "Time is of the essence in this Contract." (line 179).

- Failure of Performance Clause: "If Buyer fails to perform this Contract within the time allotted, including payment of all deposits, the deposit paid by Buyer and deposits agreed to be paid, may be recovered and retained by and for the account of Seller as agreed liquidated damages, consideration for the execution of this Contract and in full settlement of any claims.  Whereupon Buyer and Seller shall be released of all obligations under this Contract. Or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract." (lines 244-47)

- Additional Agreements Clause: "No prior or present agreements or representations shall be binding upon Buyer or Seller unless included

---

[1] The use of the term "Contract" with respect to all of the offers (Afroozes Exhibits 1-5) is not intended to reflect that there exists a valid and enforceable contact under the law.  All of the contracts/offers, except one, do not contain the signature of a seller.  Exhibit 5 does contain the signature of Yaron, but it does not include the signature of the co-owner/seller, the Debtor in this case.

in the Contract. No modification to or change in this Contract shall be valid or binding upon the parties unless in writing and executed by the parties intended to be bound by it." (lines 258-59).

Afrooz Exhibit 2 (Contract 2) contains similar material terms as Contract 1; however, the proposed purchase price was increased to $5,200,000.00 and the proposed closing date was modified to October 1, 2009.

Afrooz Exhibit 3 (Contract 3) also contained the same material terms as both Contract 1 and the modifications in Contract 2; but, Contract 3 provided a new acceptance date of September 10, 2009 (line 26).

Afrooz Exhibit 4 (Contract 4) has a modified acceptance date of September 17, 2009, but no other pages are attached thereto.  Exhibit 5 is an amended version of the various other proposals; it contains multiple changes but no one has initialed those changes.  Specifically, the proposed acceptance date is changed to September 24, 2009 and the proposed closing date is October 24, 2009.  Contract 5 reflects the signatures of the Afroozes taken from the earlier contracts, to wit, Contract 1, and also contains the signature of Yaron, but Yaron's signature post-dates the hearing on the approval of the sale in the Partition Action.

Thus, the Court believes Contract 3 is the operative contract at issue in this matter, as Contract 3 was the only contract that was presented to the presiding judge in the Partition Action for consideration and approval, and is the contract which is attached to the Afroozes' Claim 3. The *Emergency Motion For Approval of Sale* (Afrooz Exhibit 13) filed in the Partition Action sought the approval of the sale of the Condominium to the Afroozes "**pursuant to the attached Contract for Sale and Purchase**" – the attached contract is Contract 3.  (Emphasis added). Additionally, no modifications to Contract 3 were ever approved by the judge in the Partition Action.  Contracts 4 and 5 are unilateral modifications of earlier proposed contracts, and were

not approved by the judge in the Partition Action.  Notwithstanding, the Debtor did not execute any of the contracts, including Contract 3.

At the time the judge in the Partition Action considered approval of Contract 3, it was represented that the $100,000.00 deposit required by the contact was in escrow.  However, at trial, it was established that was not so.  Neither the state court nor the others involved in the state court litigation knew that the $100,000.00 escrow deposit was not made at the time of the hearing in the Partition Action to approve the sale.  In fact, the escrow deposit was not made until September 21, 2009 – four (4) days after the hearing in the Partition Action.

Furthermore, the evidence did not establish that the Afroozes were ready, willing and able to close on Contract 3 by October 1, 2009, hence the proposed extended deadlines as suggested in Contracts 4 and 5.  The evidence presented did establish:

1) Contract 3 expired on its own terms on September 10, 2009, as neither the Debtor nor Yaron ever signed or accepted it in writing prior to or at the time of the hearing on September 17, 2009;

2) the closing, as set forth in Contract 3, did not occur on or before October 1, 2009; and,

3) the Earnest Money deposit, which was identified in the Contract 3, was not timely made, and was, in fact, deposited four (4) days after the hearing where the state court judge approved the sale, upon the representation that the deposit was in escrow.

II. **PROCEDURAL HISTORY**

The Debtor filed its bankruptcy petition on October 23, 2009 under Chapter 11 of Title 11 of the United States Code.  The Debtor thereafter filed an *Emergency Motion To Authorize And Approve Sale Of Property Free And Clear of Liens, Claims And Encumbrances, And Interests Pursuant To 11 U.S.C. Section 363(f) And To Confirm Sale To The Highest And Best Bidder* (DE 59) ("Sale Motion").  Bidding procedures were approved (*see* DE 68), and ultimately

the sale proceeded, and the Condominium was sold for $6,250,000.00 to a third party, not the Afroozes.  However, the Afroozes did bid at the sale.

After being unsuccessful in the bidding process, the Afroozes filed Claim 3 and sought "benefit of the bargain" damages ($1,050,000.00), plus attorney fees and costs, based upon the difference between the sale price of $6,250,000.00 and their original offer price of $5,200,000.00.

In the meantime, the Debtor resolved its differences with the former co-owner, Yaron, and filed and served its *Motion to Compromise Controversy* (DE 159).  The *Motion to Compromise Controversy* was served upon all creditors and interested parties, including the Afroozes, and set forth the terms of the settlement, which included (i) that DIP would become sole owner of the sale proceeds from the sale of the Condominium in this bankruptcy case, and (ii) that Yaron had an obligation to affirmatively dismiss all pending circuit court cases.  The Partition Action is one of the circuit court cases to be dismissed upon approval of the Settlement.  After notice and hearing, the Court granted the motion and approved the settlement (DE 197).

Yaron did not seek dismissal of the Partition Action, so the Debtor sought and obtained dismissal of same.

## CONCLUSIONS OF LAW

First and foremost, the Court finds it difficult to believe there ever was a binding contract for sale of the Condominium as the sellers, Yaron and the Debtor, did not sign the operative agreement, Contract 3.  In fact, the Debtor never signed any contract and Yaron signed only one contract -- after the September 17 hearing in the Partition Action -- and that contract was not approved by the state court judge.  The record simply does not evidence that there ever was a meeting of the minds between the buyers and the sellers.

I.     ANTICIPATORY BREACH

It is clear to the Court that the Afroozes never complied with the very contract they seek to enforce for damage purposes. Contract 3 was not complied with by the Afroozes as they did not timely tender the escrow deposit and did not close within the time period required under the court-approved contract.

Under Florida law, where a material breach has taken place as to one party to a contract, the other contracting party is discharged from its obligations to the first party. *See, e.g., Nacoochee Corporation v. Pickett*, 948 So.2d 26, 30 (Fla. 1st DCA 2007). In this case, Contract 3 provided that "time was of the essence" as to all terms and conditions, including the deposits required to be paid under the contract. At trial, Peter Afrooz admitted he did not have in escrow the $100,000.00 earnest money deposit at the time the state court approved the contract for sale, as represented to the state court judge. Peter admitted that the deposit was not made until four (4) days after the hearing, and well after Contract 3 was signed by the Afroozes indicating the deposit was paid. Failure to timely remit the earnest money deposit is a material breach of the contract. *Id. See also, SunBank of Miami v. Lester*, 404 So.2d 141 (Fla. 3rd DCA 1981) (anticipatory breach where the contract made time of the essence and buyer did not make timely second deposit pursuant to terms of contract to purchase); *Arvesu v. Blancom Props., N.V.,* 913 So.2d 1231, 1232 (Fla. 3d DCA 2005) (anticipatory breach where "there was no evidence of the initial deposit and no tender of the second deposit required by the Commercial Contract").

Contract 3 was already breached by the Afroozes and was not subject to enforcement against the Debtor or Yaron. As a matter of law, the Afroozes cannot prevail on their claim and it must therefore be disallowed in its entirety. *See, e.g. MasTec, Inc vs. TJS, LLC*, 979 So.2d 285, 292 (Fla. 2nd DCA 2008 (in the absence of the buyers' timely tender of the purchase price,

the seller never became obligated to convey title before the contract expired) *citing to Vance v. Roberts,* 96 Fla. 379, 118 So. 205, 208 (1928); *Arvesu v. Blancom Props., N.V.,* 913 So.2d at 1232; *Garcia v. Alfonso,* 490 So.2d 130, 131 (Fla. 3d DCA 1986); *Hooper v. Breneman,* 417 So.2d 315, 317 (Fla. 5th DCA 1982); *Emery v. Milton,* 378 So.2d 1300, 1301 (Fla. 3d DCA 1979); *Robinson v. Abreu,* 345 So.2d 404, 405 (Fla. 2d DCA 1977).

## II. EFFECT OF DISMISSAL OF PARTITION ACTION

Additionally, the Debtor argues that the Afroozes are not entitled to a claim for "benefit of the bargain damages" arising out of Contract 3 because the pre-petition Partition Action between Debtor and Yaron [in which the sale of the Condominium was approved] was dismissed pursuant to the settlement between them. The Debtor asserts that, based upon the dismissal, the Afroozes' claim is moot as a matter of law, because the order approving the sale to the Afroozes in that case is void, *ab initio*, and of no effect, citing *JB Int'l, Inc. vs Mega Flight, Inc*., 840 So.2d 1147 (Fla. 5th DCA 2003) (when an action is dismissed without a final adjudication on the merits, the parties are left as if the suit had never been filed); *Epstein v. Ferst,* 35 Fla. 498, 509, 17 So. 414, 415 (1895); 1 Fla. Jur.2d *Actions* § 220 (2003).

While the Court does not necessarily believe that, under the circumstances herein, the later dismissal of the Partition Action moots the issues raised in this matter, the Court also does not believe that the sale approved by the state court judge resulted in or was based upon a valid, enforceable contract for sale. The Court has reviewed the authority cited by the Afroozes and determines the cases to be distinguishable from this case. In the cases cited, the courts awarded "benefit of the bargain damages" because the evidence in those cases established that there were valid and enforceable contracts for sale that were admittedly breached by the sellers. However, the inability of a seller to close does not automatically, by operation of law, mean that the buyer

is entitled to benefit of the bargain damages. In this case, the Court found no valid and enforceable contract existed; and, even if it did, then Contract 3 represents the court-approved contract and it was anticipatorily breached by the Afroozes. Thus, for the foregoing reasons, it is

**ORDERED and ADJUDGED** that Claim 3, filed by Dr. Nader Afrooz and Daisy Afrooz in the general unsecured sum of $1,053,854.80 plus interest and attorney fees, is STRICKEN and DISALLOWED.

###

Submitted by:

James B. Miller, Esq.
Counsel to Debtor
JAMES B. MILLER, P.A.
19 West Flagler Street, Suite 416
Miami, FL 33130
Tel. No. (305) 374-0200
Fax. No. (305) 374-0250
Email: bkcmiami@gmail.com

Copies to:

James B. Miller, Esq.
Counsel to Debtor
JAMES B. MILLER, P.A.
19 West Flagler Street, Suite 416
Miami, FL 33130
Tel. No. (305) 374-0200
Fax. No. (305) 374-0250
Email: bkcmiami@gmail.com

Thomas R. Lehman, Esq.
Amanda Quirke, Esq.
Counsel to Dr. Nader and Daisy Afrooz
Levine Kellogg Lehman Schneider & Grossman, LLP
201 South Biscayne Boulevard, 34th Floor
Miami, FL 33131
Tel. No. (305) 403-8788
Fax. No. (305) 403-8789
Email: trl@LKLlaw.com; aq@LKLlaw.com

(Attorney Miller shall serve a conformed copy of this Order)